UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 8:01-cr-190-T-23MAP
                                                     8:05-cv-840-T-23MAP

GEOVANNI QUINTERO RENDON
_____/

## O R D E R

Rendon and three other defendants were indicted for both conspiring and
possessing with the intent to distribute cocaine while on board a vessel.  After a jury
was selected but before opening statements, the defendants pleaded guilty without a
written plea agreement.  Rendon's conviction and sentence were affirmed on direct
appeal.  United States v. Rendon, 354 F.3d 1320 (11th Cir. 2003), cert. denied, 541
U.S. 1035 (2004).  Rendon's motion to vacate pursuant to 28 U.S.C. § 2255 (Doc. 1)
challenges the validity of Rendon's conviction and sentence of 360 months.  The United
States admits that the motion to vacate is timely, Response at 9 (Doc. 8), but correctly
argues that the motion to vacate lacks merit.

## FACTS

The following facts are reported in United States v. Rendon, 354 F.3d at 1322-23.

While patrolling international waters in the Eastern Pacific Ocean on May
11, 2001, the crew of a United States Navy P3 surveillance airplane
spotted a "go-fast" vessel traveling at high speed and followed it.  Shortly
thereafter, the crew observed the occupants of the boat throwing bales
overboard.  The Navy P3 crew informed the United States Coast Guard
Law Enforcement Detachment aboard the USS HALYBURTON of the
position of the go-fast boat and also dropped a sonar buoy into the water
to mark the location of the discarded bales.

A helicopter was launched from the USS HALYBURTON to investigate the go-fast boat.  The helicopter videotaped the floating bales and followed the go-fast boat with a crew of four for several hours as it increased its speed and changed course.  After failed attempts to contact the go-fast crew by both the USS HALYBURTON and the helicopter with communications equipment, the USS HALYBURTON launched a rigged hull inflatable boat to intercept the go-fast boat.  When Coast Guard personnel boarded the go-fast boat, the four-man crew had their hands raised.  Defendant-Appellant, Geovanni Quintero Rendon, identified himself as the captain and advised that they had departed from Caballo Beach, Colombia, the previous day to assist some lost fishermen.  The other crew members were Julian Pineda Torres, John Caisedo Castro, and Carlos Estupinan Valencia.

Although the vessel flew no flag and contained no identifying markings or registration documents, Rendon stated that the boat was registered in Colombia.  Colombian officials, however, were unable to confirm Rendon's claim of registry.  Inspection of the boat revealed twenty-three barrels of fuel, fuel filters, containers of oil, a spare engine, and two high frequency radios.  Coast Guard personnel found traces of cocaine in the forward compartment of the boat as well as on the port and starboard rails.

Rendon and the other crew members were moved to the USS HALYBURTON and detained.  The go-fast boat was destroyed as a navigation hazard.  The next morning, the USS HALYBURTON proceeded to the area where the cargo had been jettisoned and recovered forty-eight bales of cocaine.  Subsequent analysis revealed a net weight of 1,171 kilograms of cocaine with a seventy-percent purity level.  Rendon and the other crew members were taken to Jacksonville, Florida.

Rendon presents four grounds in his motion to vacate, two claims that trial counsel was ineffective for failing to secure a written plea agreement and challenge the United States' argument that the vessel was not registered with Colombia, and two claims challenging the computation of sentence because the court relied on evidence beyond that alleged in the indictment.  Rendon cannot again litigate issues rejected on direct appeal.  United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed

- 2 -

of on direct appeal. '[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255.' "), cert. denied, 531 U.S. 1131 (2001) (citation omitted).

United States v. Rendon, 354 F.3d at 1323, reports that Rendon raised four issues on direct appeal.

> He first argues that the district court erred in failing to dismiss the indictment because it lacked subject matter jurisdiction and, consequently, was without jurisdiction to sentence him.  Second, he contends that the [Maritime Drug Law Enforcement Act] violates Apprendi by incorporating the penalty provisions of 21 U.S.C. § 960.  Third, he argues that the district court erred in giving him upward adjustments for being the captain of the go-fast boat as well as being an organizer and leader of the conspiracy.  Fourth, he asserts that the district court erred in not granting him "safety valve" relief.

Because Rendon is precluded from both re-litigating issues rejected on appeal and relying on the retroactive application of Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005),[1] only ground one in the motion to vacate is reviewable on the merits, a claim of ineffective assistance of counsel.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Proving a claim of ineffective assistance of counsel is difficult.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir.

---

[1] In re Dean, 375 F.3d 1287, 1290 (11th Cir. 2004) ("Because Blakely, like Ring [v. Arizona, 536 U.S. 584 (2002)], is based on an extension of Apprendi, Dean cannot show that the Supreme Court has made that decision retroactive to cases already final on direct review."); In re Anderson, 396 F.3d 1336, 1339 (11th Cir. 2005) ("Regardless of whether Booker established a 'new rule of constitutional law' within the meaning of §§ 2244(b)(2)(A) and 2255, the Supreme Court has not expressly declared Booker to be retroactive to cases on collateral review.").

1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)). Strickland

v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled
> and well documented. In Strickland v. Washington, 466 U.S. 668, 104
> S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part
> test for analyzing ineffective assistance of counsel claims. According to
> Strickland, first, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment. Second, the defendant must show that the
> deficient performance prejudiced the defense. This requires showing that
> counsel's errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice.

Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305

("When applying Strickland, we are free to dispose of ineffectiveness claims on either of

its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional

judgment." Strickland v. Washington, 466 U.S. at 690. "[A] court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct

on the facts of the particular case, viewed as of the time of counsel's conduct."

Strickland v. Washington, 466 U.S. at 690. Strickland requires that "in light of all the

circumstances, the identified acts or omissions were outside the wide range of

professionally competent assistance." Strickland v. Washington, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Rendon must demonstrate that error by counsel prejudiced the defense. Strickland v. Washington, 466 U.S. at 691-92. To meet this burden, Rendon must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. at 690-91. Rendon cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v.

<u>Kemp</u>, 483 U.S. 776, 794 (1987)).  <u>See</u> <u>also</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983)
(counsel has no duty to raise frivolous claims).

Rendon alleges that trial counsel was ineffective for not securing a written plea
agreement, specifically that Rendon was induced to plead guilty when the prosecutor
opined that Rendon would get twelve to thirteen years and counsel failed to incorporate
the representation into a written agreement.  The record belies the alleged inducement.

Before accepting Rendon's guilty plea, the magistrate judge ensured that
Rendon's decision to plead guilty was not improperly influenced by an unrecorded
promise.

> THE COURT:  Has anyone made any promises to you or given you any
> kind of assurances so as to get you to plead guilty in this case?  Mr.
> Pineda, has anyone done this, made any promises to you?
>
> DEFENDANT PINEDA:  (Shakes head.)
>
> THE COURT:  You have to answer yes or no.
>
> DEFENDANT PINEDA:  No.
>
> THE COURT:  Mr. Caisedo?
>
> DEFENDANT CAISEDO:  No.
>
> THE COURT:  Mr. Estupinan?
>
> DEFENDANT ESTUPINAN:  No, Sir.
>
> THE COURT:  Mr. Rendon?
>
> DEFENDANT RENDON:  No.

Transcript of Guilty Plea Proceedings at 16 (Doc. 170).  Additionally, the magistrate

judge ensured that Rendon understood that he could not withdraw his plea if the

sentence imposed is greater than expected.

> THE COURT:  Now, your lawyer, each of your lawyers, may have given
> you some opinion about what he thinks the sentence will be in this case.
> You may have come to some conclusion on your own as to what you think
> should be a fair sentence.  I want to make sure, however, that you
> understand that if the sentence is more severe than what you expected it
> to be, you will not be able to withdraw your plea of guilty.  Do you
> understand this?
>
> DEFENDANT ESTUPINAN:  (Nods head).
>
> DEFENDANT PINEDA:  Yeah.
>
> DEFENDANT CAISEDO:  (Nods head).
>
> DEFENDANT QUINTERO (RENDON):  (Nods head).
>
> THE COURT:  Everyone understand?
>
> DEFENDANT QUINTERO (RENDON):  Yes.
>
> THE COURT:  All right.  All have answered affirmatively.

Transcript of Guilty Plea Proceedings at 23-24 (Doc. 170).  Consequently, Rendon fails

to show that counsel's performance was both deficient and prejudicial.

Accordingly, the motion to vacate pursuant to 28 U.S.C. § 2255 (Doc. 1) is

**DENIED**.  The clerk shall enter a judgment against Rendon and close this action.

ORDERED in Tampa, Florida, on July 25, 2008.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE